**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SUSAN L. MORTIMER<br>5230 State Route 7<br>New Waterford, Ohio 44445<br><br>       *Plaintiff,*<br><br>-vs-<br><br><br>WAL-MART ASSOCIATES, INC.<br>c/o CT Corporation System,<br>Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>       *Defendant.*<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: _____<br><br>Judge _____<br><br>**COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked under federal question jurisdiction provided under 28 U.S.C. §1331, in that Plaintiff's Complaint asserts violations of the Family and Medical Leave Act of 1993, 29 U.S.C. §2611, *et seq*., ("FMLA").

2.      Venue is proper in this Court under 28 U.S.C. §1391, because Defendant's actions took place in the Northern District of Ohio.

## PARTIES

3.      At all times relevant, Plaintiff Susan L. Mortimer ("Ms. Mortimer") resided at 5230 State Route 7, New Waterford, Ohio and was employed by Defendant Wal-Mart Associates, Inc.

4.      At all times relevant, Defendant Wal-Mart Associates, Inc. ("Wal-Mart") is a foreign corporation and operates a facility located at 16280 Dresden Avenue, East

Liverpool, Ohio 43920. Wal-Mart is in the business of providing for sale a variety of goods and services, and is therefore engaged in commerce, and has employed 50 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year in relation to the events alleged below.

## FACTUAL BACKGROUND

5.      Ms. Mortimer had been employed by Wal-Mart for 14 years, from on or about October 1, 2003 until her wrongful termination effective on or about June 20, 2017. Prior to her termination and for the 12 months preceding her request for leave under the FMLA, Ms. Mortimer worked full-time as an Overnight Stocker, with her usual shift from 10:00 p.m. to 7:00 a.m.

6.      During her tenure at Wal-Mart, Ms. Mortimer successfully performed her job duties and responsibilities.

7.      Around 7:00 a.m. the morning of Sunday, May 7, 2017, Ms. Mortimer experienced severe symptoms of what she believed to be 1 or more blood clots in her left calf, as her left calf was severely swollen and extremely tender to the touch. She was unable to stand or walk. Ms. Mortimer then went to the emergency room. While at the emergency room, Ms. Mortimer was diagnosed with having approximately 8 blood clots in her left calf and was ordered by the treating physician to stay off her feet, apply warm compresses to her left calf, elevate her leg, and not to drive until she was permitted to return to work, which was not until her shift starting at 10:00 p.m. on Wednesday night, May 10th. Ms. Mortimer was also instructed to follow-up with her primary care physician. As a result of her blood clots, the treatment prescribed by the treating physician, and the necessary period of recovery, Ms. Mortimer was also, during this time

period, unable to perform her other usual daily activities, such as walking her dog, getting the mail, and cleaning.

8.     After she was discharged from the hospital, Ms. Mortimer's family drove her to Wal-Mart. Ms. Mortimer advised Co-Manager Dan Reed of her diagnosis and that she was unable to work until her shift Wednesday night at 10:00 p.m. and provided Mr. Reed with a return-to-work slip.

9.     The next day, Monday, May 8th, Ms. Mortimer applied for leave under the FMLA.

10.    On May 12, 2017, Ms. Mortimer had an in-person, follow-up appointment regarding her blood clots with her primary care physician and was placed on a 2-week regime of antibiotics.

11.    After not receiving any response regarding her application for FMLA leave, Ms. Mortimer contacted Wal-Mart's third-party administrator on May 23rd to ask if her request for FMLA leave would be granted. Ms. Mortimer was advised that her FMLA request would not be granted because her request was not for an extended period of time or was not for intermittent leave. At no time between her application and learning of her denial of leave did anyone from Wal-Mart or on Wal-Mart's behalf contact Ms. Mortimer to make any further inquiry regarding her application or to request any further information. Ms. Mortimer was then advised that her missed days would need to be "handled in store". On that same day, Ms. Mortimer contacted Co-Manager Reed who advised her that he would approve her missed days as "authorized" absences, and therefore, she would not accrue any attendance points.

3

12.     On May 26, 2017, Ms. Mortimer again followed-up in person with her primary care physician regarding her blood clots.

13.     Despite assurances from Co-Manager Reed, Co-Manager Jim Smokonick, and Ms. Mortimer's direct supervisor, Dave Brewer, Wal-Mart treated the 3 days missed as "unauthorized absences", and as a result, Ms. Mortimer incurred 3 attendance points.

14.     On June 19, 2017, Ms. Mortimer called Wal-Mart's Department of Human Resources and complained to HR that she had been denied FMLA leave and had been told multiple times by management that her missed days were "authorized", yet she accrued 3 attendance points. The HR representative told Ms. Mortimer that the store would be contacted and that HR would get back with her. No one from HR, however, contacted Ms. Mortimer. That evening, when Ms. Mortimer appeared for work, Co-Managers Smokonick and Reed told Ms. Mortimer that management was upset that she had complained to HR.

15.     The next day, on June 20, 2017, Wal-Mart terminated Ms. Mortimer 5 minutes after she clocked in for her shift for violating Wal-Mart's attendance policy.

16.     The next day, on June 21, 2017, Ms. Mortimer called HR and told the representative that she had been fired in retaliation for complaining and requested to have an "open door" meeting with the head of HR. No one from HR ever contacted Ms. Mortimer about her request for an "open door" meeting.

**COUNTS I and II**
**Violations of 29 U.S.C. §2611, *et seq*. – FMLA Interference and Retaliation**

17.     Plaintiff reaffirms and realleges Paragraphs 1 through 16 of her Complaint as if fully rewritten herein.

18.     At all times relevant to this Complaint, individuals acting on behalf of Defendant were agents and/or employees of Defendant. Defendant is liable for the unlawful acts of its agents and employees under the doctrine of *respondeat superior*.

19.     Ms. Mortimer is an "eligible employee" as that term is defined by 29 U.S.C. §2611(2)(A).

20.     Defendant meets the definition of an "employer" as that term is defined by 29 U.S.C. §2611(4).

21.     Ms. Mortimer requested leave under the FMLA because she suffered from a "serious health condition". Under 29 U.S.C. §2611(11) and 29 C.F.R. §825.113, a "serious health condition" includes as an illness, impairment, and/or a physical condition that requires continuing treatment by a health care provider. A "serious health condition" involving "continuing treatment by a health care provider" includes a period of incapacity of more than 3 consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves either: (1) treatment 2 or more times within 30 days of the first day of incapacity by a health care provider; or (2) treatment by a health care provider on at least 1 occasion which results in a regimen of continuing treatment under the supervision of a health care provider. See 29 C.F.R. §825.115. "Treatment by a health care provider" means "an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within 7 days of the first day of incapacity." See 29 C.F.R. §825.115(a)(3). "A regime of continuing

treatment" includes "a course of prescription medication (e.g., an antibiotic)". See 29 C.F.R. §825.113(c). "Incapacity" means an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." See 29 C.F.R. §825.113(b).

22.     As alleged in Paragraphs 7 through 12 above, Ms. Mortimer suffered from a "serious health condition" in that: (a) she was diagnosed with blood clots which incapacitated her for a period of over 72 consecutive hours (*i.e.*, over 3 consecutive, full calendar days); (b) she was incapacitated in that she could not work or perform regular daily activities due to her blood clots, the treatment regimen ordered by the treating physician, and the necessary period of recovery; (c) she was subsequently treated by a health care provider for her blood clots 2 times within 30 days of the first day of her incapacity; (d) she was also treated by a health care provider on at least 1 occasion which resulted in a regimen of continuing treatment under the supervision of her health care provider (*i.e.*, a 2-week regimen of antibiotics); and (e) each follow-up appointment with her primary care physician regarding her blood clots was in person and the first in-person treatment visit took place within 7 days of her first day of incapacity.

23.     Ms. Mortimer was entitled to leave pursuant to 29 U.S.C. §2612(a)(1).

24.     Ms. Mortimer provided Defendant with notice of her need for leave pursuant to 29 U.S.C. §2612(e).

25.     Defendant violated 29 U.S.C. §§2612 and 2615 when it interfered with the exercise of Ms. Mortimer's rights under the FMLA and retaliated against Ms. Mortimer for requesting FMLA leave by terminating her.

26.    The conduct of Defendant was done willfully, maliciously and/or intentionally, and with reckless disregard for the rights of Ms. Mortimer. Additionally, Defendant lacked good faith and reasonable grounds for its conduct.

27.    As a direct and proximate result of Defendant's conduct, Ms. Mortimer has suffered and will continue to suffer economic injuries, including but not limited to the loss of salary, benefits, and other privileges and conditions of employment, for which Defendant is liable.

## COUNT III
### Violation of 29 U.S.C. §2615(a)(2) and 29 C.F.R. §825.220
### FMLA Discrimination/Opposing Unlawful Conduct

28.    Plaintiff reaffirms and realleges Paragraphs 1 through 27 of her Complaint as if fully rewritten herein.

29.    Defendant violated 29 U.S.C. §2615(a)(2) and 29 C.F.R. §825.220 by discriminating against and terminating Ms. Mortimer for opposing Defendant's violation of the FMLA and/or opposing Defendant's conduct that she reasonably believed to be a violation of the FMLA.

30.    The conduct of Defendant was done willfully, maliciously and/or intentionally, and with reckless disregard for the rights of Ms. Mortimer. Additionally, Defendant lacked good faith and reasonable grounds for its conduct.

31.    As a direct and proximate result of Defendant's conduct, Ms. Mortimer has suffered and will continue to suffer economic injuries, including but not limited to the loss of salary, benefits, and other privileges and conditions of employment, for which Defendant is liable.

**WHEREFORE**, Plaintiff Susan L. Mortimer respectfully requests that this Court award damages to Ms. Mortimer and against Defendant in excess of $25,000.00, including all statutory damages; compensatory damages, back pay, and front pay; attorney fees, expenses, and costs of court; pre- and post-judgment interest; and all other relief, whether in law or in equity, which will fully and fairly compensate Plaintiff for her injuries and damages.

Respectfully submitted,

_____/s/ Kami D. Brauer_____
KAMI D. BRAUER (#0071030)
The Law Firm of Kami D. Brauer, LLC
700 West St. Clair Avenue, Suite 316
Cleveland, Ohio 44113
(216) 236-8537 (telephone)
(216) 621-7810 (facsimile)
kamibrauer@kdbrauerlaw.com

*Counsel for Plaintiff*

## **JURY DEMAND**

A trial by jury is hereby demanded against Defendant on all issues that may be so tried.

_____/s/ Kami D. Brauer_____
KAMI D. BRAUER (#0071030)

*Counsel for Plaintiff*