IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN L. MORTIMER, | ) | CASE NO. 4:18-CV-00166 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT WAL-MART STORES** |
| WAL-MART STORES EAST, LP, | ) | **EAST, LP'S MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| Defendant. | ) | |

NOW COMES Defendant Wal-Mart Stores East, LP ("Walmart") and moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to grant summary judgment in their favor and against Plaintiff Susan Mortimer ("Plaintiff") on all of her claims. Summary judgment is appropriate because there are no issues of material fact and Walmart is entitled to judgment as a matter of law.

A Memorandum in Support of this Motion is attached.

Respectfully submitted,

*/s/ Donald C. Bulea*
Karen L. Giffen (0042663)
Donald C. Bulea (0084158)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:     (216) 621-5161
Facsimile:     (216) 621-2399
E-mail:           kgiffen@thinkgk.com
                       dbulea@thinkgk.com
***Counsel for Defendant Wal-Mart Stores East, LP***

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................. ii

**TABLE OF AUTHORITIES** ......................................................................................... iii

**I.  INTRODUCTION AND SUMMARY OF ARGUMENT** ........................................ 1

**II.  STATEMENT OF ISSUES** ...................................................................................... 2

**III.  STATEMENT OF FACTS** ...................................................................................... 2

**IV.  LAW AND ARGUMENT** ........................................................................................ 9

   **A.  Summary Judgment Is Appropriate** ................................................................. 9

   **B.  Plaintiff's FMLA Interference Claim Fails As A Matter of Law** ................................ 10

     *1. Plaintiff Was Not Incapacitated For More Than Three Full Calendar Days And Therefore Was Not Entitled To FMLA Leave As A Matter of Law* ................................ 10

     *2. Plaintiff Failed To Provide A Medical Certification As Requested And Thus Her Claim For FMLA Leave Was Properly Denied As A Matter Of Law* ............................... 13

   **C.  Plaintiff's Retaliation Claim Fails As A Matter Of Law Because She Did Not "Avail" Herself of an FMLA Protected Right And Termination Of Her Employment Was Not Causally Related To Any FMLA Related Activity** ................................................................ 15

   **D.  There Is No Evidence Of Pretext As Walmart Applied Its Absence Policy** ............... 18

**V.  CONCLUSION** ........................................................................................................ 20

**CERTIFICATION OF EXCHANGE WITH PLAINTIFF'S COUNSEL** ........................... 21

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.1** ................................................... 22

**CERTIFICATE OF SERVICE** ..................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Arban v. West Publ'g Corp.,* 345 F.3d 390, 404 (6th Cir.2003) .................................................. 16

*Bauer v. Varity Dayton-Walther Corp*., 118 F.3d 1109 (6th Cir. 1997) ...................................... 13

*Beaver v. RGIS Inventory Specialists, Inc.,* 144 F. App'x 452, 455-56 (6th Cir. 2005) ........... 13

*Bond v. Abbott Labs.*, 7 F. Supp. 2d 967, 973 (N.D. Ohio 1998) ......................................... 12, 13

*Brenneman v. MedCentral Health Sys*., 366 F.3d 412, 422 (6th Cir. 2004) ............................. 14

*Cash v. Smith,* 231 F.3d 1301, 1307 (11th Cir. 2000) ................................................................ 16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................. 9

*Chanicka v. JetBlue Airways Corp.*, 243 F. Supp. 3d 356, 362 (E.D.N.Y. 2017) ....................... 1

*Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1330 (6th Cir. 1994) ..................................... 18

*Crook v. Simpson Strong-Tie Co.*, M.D.Tenn. No. 3:10-cv-00445, 2012 U.S. Dist. LEXIS 4833, *54 (Jan. 17, 2011).......................................................................................................................... 18

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir.2012) ......................................................... 10

*Edgar v. JAC Products,* 443 F.3d 501, 508 (6th Cir. 2006) ................................................... 15, 17

*Gulan v. FRB of Cleveland,* 2003 U.S. Dist. LEXIS 15749, 2003 WL 22047802 (N.D. Ohio Aug. 27, 2003) .............................................................................................................................. 14

*Harrigan v. Dana Corp.,* 612 F.Supp.2d 929, 944-945 (N.D. Ohio 2009)............................ 18, 20

*Harrington v. Boysville of Michigan, Inc.,* 145 F.3d 1331 (6th Cir. 1998)................................ 14

*Heard v. SBC Ameritech Corp.,* E.D. Mich. No. 05-71712, 2005 U.S. Dist. LEXIS 46464, at *23-24 (July 27, 2005), *affirmed* 205 F. Appx. 355 (6th Cir. 2006)........................................ 16

*Jude v. Hitachi Auto. Sys. Am.*, E.D. Ky. No. 5:15-cv-57-KKC, 2016 U.S. Dist. LEXIS 95814, *5 (July 22, 2016) ................................................................................................ 11, 17, 20

*Kinds v. Ohio Bell Tel. Co.*, N.D. Ohio No. 1:10-CV-01596, 2012 U.S. Dist. LEXIS 105507, *16 (July 30, 2012) ........................................................................................................................ 14

*Lackey v. Jackson Cty., Tenn.*, 104 F. App'x 483, 489 (6th Cir. 2004) ..................................... 15

*Layman v. C & D Techs., Inc*., E.D.Tenn. No. 1:03-cv-275, 2004 U.S. Dist. LEXIS 27696, *31 (November 4, 2004) ....................................................................................................................... 13

*Manns v. ArvinMeritor, Inc.,* 291 F. Supp. 2d 655, 662 (N.D. Ohio 2003)......................... 17, 20

*McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) ............................................................................................................................................. 15

*Michael v. Caterpillar Fin. Servs. Corp*., 496 F.3d 584, 598-99 (6th Cir. 2007)....................... 20

*Morris v. Family Dollar Stores of Ohio, Inc*., 320 F. App'x 330, 338 (6th Cir. 2009)............... 16

*Nawrocki v. United Methodist Retirement Comtys., Inc.,* 174 F. App'x 334, 338 (6th Cir. 2006) ......................................................................................................................................... 15, 16

*Novak v. MetroHealth Med. Ctr*., 503 F.3d 572, 578 (6th Cir. 2007) .................................. 14, 15

*Olsen v. Ohio Edison Co.,* 979 F.Supp. 1159, 1164 (N.D. Ohio 1997).......................... 11, 12, 13

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S. Ct. 1775 (1989)................................. 17

*Reeves v. Case W. Res. Univ.*, No. 1:07-CV-1860, 2009 U.S. Dist. LEXIS 90308, at *39 (N.D. Ohio Sep. 30, 2009) ..................................................................................................................... 10

*Robinson v. Farmers Servs. LLC,* D. Kan. No. 10-02244, 2010 U.S. Dist. LEXIS 110128, at *12-13 (Oct. 14, 2010)................................................................................................................... 16

*Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d at 286 ................................................................. 20

*Shefferly v. Health Alliance Plan of Michigan,* 94 Fed. Appx. 275, 281 (6th Cir. 2004).......... 18

***Smith v. Chrysler Corp.***, 155 F.3d 799, 807 (6th Cir.1998) ........................................................ 19
***Smith v. Hope School,*** 560 F.3d 694, 701 (7th Cir. 2009)........................................................ 16
***Suits v. The Heil Co.,*** 192 Fed. Appx. 399, 407 (6th Cir. 2006) .............................................. 18
***Sybrandt v. Home Depot, U.S.A., Inc***., 6th Cir. No. 08-5598, 560 F.3d 553, 2009 U.S. App. LEXIS 6401, * 5 (March 26, 2009) ................................................................................... 20
***Ward v. City of Gadsden***, 2017 U.S. Dist. LEXIS 19793, *14 (Feb. 13, 2017) ......................... 16
***Willis v. Legal Aid Defender Ass'n***, E.D. Mich. No. 11-11384, 2012 U.S. Dist. LEXIS 9303, *35 (Jan. 26, 2012)............................................................................................................... 17

## Statutes

29 U.S.C. §2611(11)(A)............................................................................................................ 11
29 U.S.C. §2611(11)(B)............................................................................................................ 11
29 U.S.C. §2612(a)(1)(D) ........................................................................................................ 10
29 U.S.C. §2617(a)(1)(A)(iii) ..................................................................................................... 1

## Rules

Fed.R.Civ.P. 56(a) .................................................................................................................... 9

## Regulations

29 C.F.R. §825.114(c)............................................................................................................... 13
29 C.F.R. §825.115 .................................................................................................................. 12
29 C.F.R. §825.115 (a)(1),(2) ................................................................................................... 11
29 C.F.R. §825.115(b) through (e) ........................................................................................... 11
29 C.F.R. §825.305(b) .............................................................................................................. 14
29 C.F.R. §825.305(d) .............................................................................................................. 14

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

In this case, Plaintiff's employment ended because she violated Walmart's clearly defined attendance policy that provides for termination if an associate has nine (9) unauthorized absences in a six (6) month period. Of her nine (9) absences, Plaintiff only disputes the final three (3), which occurred on May 7, 8, and 9, 2017.  Plaintiff missed these three days of work because she had superficial blood clots in her leg.  Plaintiff did not receive inpatient care. Plaintiff was not incapacitated for more than three (3) days. Plaintiff had never previously experienced superficial blood clots, has not had any further blood clots since, and never missed any other work because of blood clots.

Accordingly, as a matter of law, Plaintiff did not suffer from a "serious health condition" that would qualify her for leave under the Family and Medical Leave Act ("FMLA").  Moreover, Plaintiff admitted that she failed to provide Walmart or Sedgwick, Walmart's third-party administrator for all claims for leave under the FMLA, with a certification completed by a health care provider as requested. Accordingly, Sedgwick properly denied Plaintiff's application to have these three (3) absences covered under the FMLA.  Walmart relied on Sedgwick's denial,[1] confirmed it to be correct based on the information Plaintiff provided, and as a result Plaintiff's three (3) absences became occurrences under Walmart's absence policy.  As a result, Plaintiff had nine (9) occurrences in a six (6) month period and her employment was terminated as stated in Walmart's policy.  Walmart did not interfere with Plaintiff's rights and did not discriminate or retaliate against Plaintiff.  Summary judgment is proper on all of Plaintiff's claims.

---

[1] The FMLA "shields employers from liquidated damages when they rely in good faith on decisions made by third-party administrators." *Chanicka v. JetBlue Airways Corp.*, 243 F. Supp. 3d 356, 362 (E.D.N.Y. 2017). Because Walmart relied on Sedgwick to determine whether or not Plaintiff was entitled to a leave of absence under the FMLA in this case, (*see* Bishop Dec., ¶4), 29 U.S.C. §2617(a)(1)(A)(iii) permits the Court to bar liquidated damages under the FMLA.

## II.     STATEMENT OF ISSUES

Plaintiff's claims for FMLA interference, retaliation, and/or discrimination fail because she cannot demonstrate that she: (1) was entitled to FMLA leave; (2) was denied any benefits under the FMLA to which she was entitled; or (3) was retaliated against for exercising her FMLA rights. Walmart is entitled to judgment as a matter of law on all of Plaintiff's claims.

## III.     STATEMENT OF FACTS

Plaintiff was employed by Walmart at Store # 1707 (in East Liverpool, Ohio) as an Overnight Stocker working from 10:00 PM to 7:00 AM. (Deposition of Susan Mortimer, pg. 8:12-9:17, July 25, 2018 (hereafter "Plaintiff Dep."); cited portions[2] of Plaintiff's deposition are attached as Exhibit 1).  At any given time, Store #1707 employs at least 300 hourly associates like Plaintiff. (Declaration of Kelly Mavar, ¶3, November 9, 2018, attached as Exhibit 2 (hereafter "Mavar Dec.")).   All hourly associates are required to adhere Walmart's Attendance/Punctuality policy (hereafter "Attendance Policy"). (Mavar Dec., ¶4).  Walmart's Attendance Policy is no fault in that it provides that an absence "occurrence" takes place whenever an associate has an "unauthorized absence." (Attendance/Punctuality Policy – Ohio, pg. 2, attached as Exhibit 3; Mavar Dec., ¶4). Per the Attendance Policy, an "unauthorized absence" occurs "any time you are away from a scheduled shift for a reason that is not authorized[3] or approved." (*Id.*) The Attendance Policy provides that if an employee accumulates "nine (9) or more occurrences in a rolling six-month period, through any combination, you will be subject to termination." (*Id.*).  It is undisputed that on March 3, 2016, Plaintiff acknowledged, in writing, the portion that per Walmart's Attendance Policy, "at nine occurrences, an associate

---

[2] A complete copy of Plaintiff's deposition transcript, including exhibits, has been separately filed with the Court.
[3] The Attendance/Punctuality policy sets forth specific instances of "authorized" absences, including those for bereavement, voting, jury duty, leaves of absence protected by law, etc. (Exhibit 3).

is terminated." (Plaintiff Dep., pg. 18:2-20:4; Susan Mortimer Personal Associate Summary Sheet, attached as Exhibit 4).

It is also undisputed that between December 20, 2016 and May 6, 2017, Plaintiff had accumulated six (6) absence occurrences. (Plaintiff Dep., pg. 15:4-17:19).[4] Plaintiff admits that she did not seek FMLA leave for these six (6) occurrences and further admitted that these absences were accurately counted as "occurrences" against her attendance record. (Plaintiff Dep., pg. 16:2-6; 21:5-10).

On May 7, 2017 at 9:00 AM, Plaintiff went to the emergency room because of pain in her left leg. (Plaintiff Dep., pg. 21:11-23:16). The emergency room staff diagnosed Plaintiff with superficial blood clots in her left leg. (*Id.*)  Plaintiff was discharged from the emergency room that same day, May 7, 2017, in the early afternoon. (Plaintiff Dep., pg. 26:3-8). While in the emergency room, Plaintiff underwent an ultrasound and spoke with the emergency room staff, but underwent no other treatment. (Plaintiff Dep., pg. 23:3-24:10). At discharge, the emergency room staff told Plaintiff to follow-up with her primary care physician, advised that she use warm compresses on her left leg, and "wrote [Plaintiff] a slip to pull [her] off work for three days." (Plaintiff Dep., pg. 23:24-24:5).

After leaving the emergency room, Plaintiff went to Store 1707 where she spoke with Store Co-Manager Dan Reed ("Reed"). (Plaintiff Dep., pg. 26:14-29:25).  Plaintiff told Reed she "had been pulled off work by the emergency [room] for blood clots in my leg." (Plaintiff Dep., pg. 29:22-25).  Reed recommended Plaintiff to apply for an FMLA leave. (*Id.*). Plaintiff obtained the contact information for Sedgwick and then left Store 1707. (Plaintiff Dep., pg. 30:12-20). There is no dispute that, at that time, Plaintiff knew if her three (3) absences were not approved

---

[4] Plaintiff's other absence occurrences took place on December 20 and 25, 2016, January 26, February 5, March 1, and April 17, 2017.

for FMLA leave they would result in occurrences under Walmart's attendance policy. (Plaintiff Dep., pg. 30:1-8).

Plaintiff missed work on May 7, 8, and 9, 2017 because of the superficial blood clots in her left leg. (Plaintiff Dep., pg. 49:23-50:2).  On May 10, 2017, Plaintiff returned to work at Walmart Store 1707 and worked her usual 10:00 PM to 7:00 AM shift. (Plaintiff Dep., pg. 45:2-46:18). Plaintiff completed her entire shift on May 10, 2017. (*Id.*).  There is no dispute that Plaintiff never missed another day of work at Walmart because of the superficial blood clots in her left leg and no health care provider ever ordered her off work for any other days because of the superficial blood clots in her left leg. (Plaintiff Dep., pg. 49:23-50:2; 61:8-11; 106:9-107:10). Further, Plaintiff admitted that she did not seek an FMLA leave for any of her absences in 2016 or 2017 other than her absences on May 7, 8, and 9, 2017. (Plaintiff Dep., pg. 16:2-17:19; 61:8-11).

After Plaintiff's emergency room visit on May 7, 2017, Plaintiff saw her family physician, Dr. Beistal, on two occasions in May 2017.  The first visit occurred on May 12, 2017. (Plaintiff Dep., pg. 50:3-7).  During this visit, Dr. Beistal visually examined Plaintiff's left leg, prescribed her with antibiotics to prevent sepsis, recommended she take over the counter aspirin, told Plaintiff to continue the compresses, and elevate her leg when possible. (Plaintiff Dep., pg. 50:8-51:25).  Plaintiff's second visit with Dr. Beistal occurred two weeks later. (Plaintiff Dep., pg. 53:8-54:7). During this visit, Dr. Beistal again visually examined Plaintiff's left leg and recommended she continue taking aspirin for another week. (Plaintiff Dep., pg. 54:8-18).  Other than the visit to the emergency room on May 7, 2017, and these two visits with Dr. Beistal, Plaintiff never received any other medical treatment or attended any other appointments because of the superficial blood clots in her left leg. (Plaintiff Dep., pg. 54:23-55:5).

On May 8, 2017, Plaintiff called Sedgwick and initiated a claim for FMLA leave. (Plaintiff Dep., pg. 36:1-37:24). Following this call, it is undisputed that Sedgwick sent and Plaintiff received a packet of information related to her FMLA claim. (Plaintiff Dep., pg. 95:11-23). Plaintiff admitted that this packet of information included a Certification of Health Care Provider form to be completed by Plaintiff or her medical treatment provider. (Plaintiff Dep., pg. 95:15-96:8; Sedgwick FMLA Package sent to Plaintiff May 8, 2017 attached as Exhibit 5). Plaintiff admitted she never gave this form to any of her health care providers, her health care providers never completed this or any other certification form, and she never provided Walmart or Sedgwick with a completed version of this certification form. (Plaintiff Dep., pg. 96:17-98:9).

Rather than providing the certification form, on May 12, 2017, Plaintiff submitted the one page work excuse letter she received from the emergency room to Sedgwick. (Plaintiff Dep., pg. 98:18-99:14; Patient Work Excuse Letter from St. Elizabeth Emergency Department, attached as Exhibit 6). The letter provides no information about Plaintiff's medical condition, does not state the date her condition commenced, does not include the anticipated length of her condition, does not mention the medical facts within the emergency room staff's knowledge, and does not describe the nature of her condition. The letter merely states "Susan Mortimer was seen and treated in our Emergency Department on 5/7/2017. She may return to work on 5/10/2017." (*Id.*)

On May 16, 2017, Sedgwick notified Plaintiff that the "work excuse" received (*i.e.,* the emergency room letter) was not sufficient to approve Plaintiff's leave. (Declaration of Reba Bishop, ¶14, November 9, 2018, attached hereto as Exhibit 7 (hereafter "Bishop Dec."); Email Sedgwick to Bishop, May 16, 2017 8:00 AM, attached hereto as Exhibit 8). Sedgwick reminded Plaintiff to have "the provider complete and return the medical certification that was sent to you." (*Id.*) Plaintiff claims that she did not receive this reminder package, despite the fact that

Sedgwick sent it to the same address and in the same manner as the first packet of information which Plaintiff admitted receiving. (Plaintiff Dep., pg. 100:13-101:21; Sedgwick FMLA Package sent to Plaintiff May 16, 2017, attached as Exhibit 9; Bishop Dec., ¶14).

Despite claiming to not have received this packet, two days later, on May 18, 2017, Plaintiff had additional information faxed to Sedgwick, including another copy of the emergency room letter, a signed authorization permitting Sedgwick to seek authentication of her FMLA certification, and the discharge papers Plaintiff received from the emergency room. (Plaintiff Dep., pg. 105:14-106:1; Plaintiff's Fax from Walmart to Sedgwick, May 18, 2018, attached as Exhibit 10). It is undisputed that Plaintiff did not include a completed Certification of Health Care Provider form in the materials she provided to Sedgwick. (Plaintiff Dep., pg. 96:3-21; 105:21-106:1; Exhibit 10, Plaintiff's Fax from Walmart to Sedgwick, May 18, 2018).

On May 24, 2018, Sedgwick sent Plaintiff a letter denying her request for leave under the FMLA. (Plaintiff Dep., pg. 106:9-107:10; May 24, 2017 Letter from Sedgwick to Plaintiff, attached as Exhibit 11).  This letter specifically stated that Plaintiff's leave was denied because "the information provided to us did not show you met all the requirements for a serious health condition. Doctor certified from 05/07/2017-05/09/2017 with a return to work of 5/10/2017. This leave must be handled through your facility." (*Id.*) Thus, because the FMLA leave was denied, Plaintiff's absences on May 7, 8, and 9, 2017 were handled pursuant to Walmart's Attendance Policy, *i.e.,* they were "unauthorized absences" and became "occurrences." (Declaration of Daniel Reed, ¶10, November 9, 2018, attached as Exhibit 12 (hereafter "Reed Dec.")).

After Plaintiff received the denial letter from Sedgwick, she claims to have had two conversations with Reed and her direct supervisor, Assistant Manager Dave Brewer ("Brewer"), about her absences and the denial of her FMLA leave request. (Plaintiff Dep., pg. 61:12-63:15).

Plaintiff claims these two conversations ended with Reed and Brewer telling Plaintiff the absences would be "handled in-store" and "they would take care of the days." (*Id.*). Sometime in June 2017, Plaintiff checked her attendance and noticed the three absences were counted as "occurrences." (Plaintiff Dep., pg. 64:24-65:7). Plaintiff again spoke to Brewer and she claims Brewer told Plaintiff "he would take them off."[5] (Plaintiff Dep., pg. 65:8-21).  Plaintiff claims that the occurrences were then removed from her record but then reappeared as occurrences the following week. (Plaintiff Dep., pg. 66:2-6).  Again, Plaintiff claims she spoke with Brewer who said he would take the occurrences off. (Plaintiff Dep., pg. 66:2-67:13).  For a third time, according to Plaintiff, the occurrences were removed but some time later reappeared. (Plaintiff Dep., pg. 67:14-18).  This time, Plaintiff spoke to Reed who told Plaintiff that he would email Store Manager Matt Simcox and "apprise him" of the situation. (Plaintiff Dep., pg. 67:14-68:21).

On June 19, 2017, Plaintiff called human resources and made a complaint about her absences "appearing and disappearing." (Plaintiff Dep., pg. 69:3-22). Plaintiff claims that, on the same day she made this complaint, Jim Smokonich, one of the Co-Managers, came up to her and stated "management was upset because [Plaintiff] had contacted human resources." (Plaintiff Dep., pg. 70:3-71:20).[6] In response to this complaint, Reed reviewed the situation, including speaking to Reba Bishop, Personnel Coordinator for Store 1707, and provided a written summary to human resources. (Reed Dec., ¶8; Email Reed to Barb Miller, June 19, 2017 4:24 PM, attached as Exhibit 13). In response, human resources told Reed that because Plaintiff's request for FMLA leave would have been denied for multiple reasons, including requesting leave

---

[5] Brewer denies ever making such a statement, but it is not material for purposes of this Motion because there is no dispute that Plaintiff's absences on May 7, 8, and 9, 2017 were not protected under the FMLA and therefore were occurrences under Walmart's attendance policy.
[6] Walmart denies this statement was ever made by Jim Smokonich but for purposes of this Motion it is not material because Jim Smokonich did not participate in reviewing Plaintiff's complaint to human resources and played no role in the decision to terminate Plaintiff's employment. (Reed Dec., ¶12; Mavar Dec., ¶9).

for only three (3) days and failing to provide a certification, it was appropriate to treat the absences as unauthorized under Walmart's attendance policy. (Reed Dec., ¶9; Email Barb Miller to Reed, June 20, 2017 8:43 AM, attached as Exhibit 13).

This is exactly what Walmart did.  Because Plaintiff's request for FMLA leave on May 7, 8, and 9, 2017 was denied, her absences were unauthorized and thus were "occurrences" pursuant to Walmart's Attendance Policy. As a result of these three (3) occurrences, Plaintiff had nine (9) occurrences in a six (6) month period.  Accordingly on June 20, 2017, Walmart terminated her employment.

Therefore, in this case Plaintiff does not and cannot dispute the following material facts:

- Plaintiff acknowledged in writing that Walmart's Attendance Policy provided that if any Walmart associate incurred nine (9) absence occurrences in a six (6) month period her employment would be terminated. (Plaintiff Dep., pg. 18:2-20:4).

- Between December 20, 2016 and May 6, 2017, Plaintiff incurred six (6) absence occurrences. (Plaintiff Dep., pg. 15:4-17:19).

- Plaintiff was absent from work for only three days (on May 7, 8, and 9, 2017) because of superficial blood clots in her left leg.  (Plaintiff Dep., pg. 49:23-50:2; 61:8-11; 106:9-107:10).

- Plaintiff worked on May 10, 2017 and continued working her normal schedule thereafter. (Plaintiff Dep., pg. 45:2-46:18).

- Sedgwick is the third party administrator used by Walmart to process all claims for leaves of absence under the FMLA.  (Bishop Dec., ¶4).

- On May 8, 2018, Plaintiff contacted Sedgwick and made a request for a leave of absence under the FMLA for her absences on May 7, 8, and 9, 2017. (Plaintiff Dep., pg. 36:1-37:24).

- Plaintiff received a packet of information from Sedgwick related to her FMLA claim, which included a blank medical certification form. (Plaintiff Dep., pg. 95:15-96:8).

- The packet of information Plaintiff received from Sedgwick specifically instructed Plaintiff to have her medical provider complete the medical certification form and return it to Sedgwick. (Plaintiff Dep., pg. 95:15-98:9).

- Plaintiff never completed and did not have any of her medical providers complete the medical certification form she received from Sedgwick. (Plaintiff Dep., pg. 96:17-98:9).

- Plaintiff never returned a completed medical certification form to Walmart or Sedgwick. (Plaintiff Dep., pg. 96:3-25).

- Sedgwick denied Plaintiff's request for FMLA leave because she only sought a leave of absence for three (3) days and she failed to provide a completed medical certification. (Plaintiff Dep., pg. 106:9-107:10).

- Plaintiff accumulated three (3) absence occurrences because of her unauthorized absences on May 7, 8, and 9, 2017. (Plaintiff Dep., pg. 38:14-22).

- Walmart terminated Plaintiff's employment on June 20, 2017. (Plaintiff Dep., pg. 72:3-73:25).

Accordingly, there is no genuine issue of material fact in this case that Walmart did not interfere with Plaintiff's FMLA rights or retaliate against Plaintiff. Walmart is entitled to judgment as a matter of law on all of Plaintiff's claims.

## IV.  LAW AND ARGUMENT

### A.  Summary Judgment Is Appropriate.

Summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" or if a plaintiff fails to provide sufficient evidence to establish the existence of any essential element she has the burden to prove at trial. Fed.R.Civ.P. 56(a).  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A plaintiff must present sufficient evidence that a jury could reasonably find in her favor. The mere existence of a scintilla of evidence to support a plaintiff's position is insufficient. Plaintiff cannot meet her burden.

There is no dispute that Plaintiff did not receive inpatient care and that she was not incapacitated for more than three, full calendar days.  Thus, Plaintiff failed to meet the requirement that she suffer from a "serious health condition" set forth in 29 U.S.C.

§2612(a)(1)(D) and thus was not entitled to FMLA leave.  In addition, Plaintiff admitted that she never provided Sedgwick or Walmart a completed medical certification form to support her FMLA leave request which, as a matter of law, warrants denial of Plaintiff's FMLA leave request.  Because Plaintiff never qualified for FMLA leave, her absences were not protected and became "occurrences" under Walmart's Attendance Policy. Thus, Plaintiff never availed herself of an FMLA right as required to set forth a claim for FMLA retaliation and there is no dispute that the decision to terminate Plaintiff's employment could not be causally connected to Plaintiff's FMLA activity.  As explained more fully below, there is nothing for a jury to decide and Walmart is entitled to judgment as a matter of law.

**B.  Plaintiff's FMLA Interference Claim Fails As A Matter of Law.**

*1.  Plaintiff Was Not Incapacitated For More Than Three Full Calendar Days And Therefore Was Not Entitled To FMLA Leave As A Matter of Law.*

To prevail on an FMLA interference claim, Plaintiff must establish that (1) she was an eligible employee; (2) Walmart is an employer for purposes of the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Walmart notice of her intent to take leave; and (5) Walmart interfered with FMLA rights to which she was entitled. ***Reeves v. Case W. Res. Univ.***, No. 1:07-CV-1860, 2009 U.S. Dist. LEXIS 90308, at *39 (N.D. Ohio Sep. 30, 2009).  Here, there is no dispute that Plaintiff cannot establish the third or fifth elements because she was not entitled to FMLA leave and therefore Walmart never denied Plaintiff FMLA benefits to which she was entitled. ***Donald v. Sybra, Inc.***, 667 F.3d 757, 761 (6th Cir.2012).

An employee is entitled to FMLA leave, and thus satisfies the third element, where the employee suffers from a "serious health condition" preventing the employee from performing the duties of her job. 29 U.S.C. §2612(a)(1)(D).  Establishing a "serious health condition" can be done in one of two ways under the FMLA.  First, an employee suffers from a "serious health

condition" if they have "an illness, injury, impairment, or physical or mental condition that involves … inpatient care in a hospital, hospice, or residential medical care facility." 29 U.S.C. §2611(11)(A). There is no dispute Plaintiff never received inpatient care of any type for her superficial blood clots. (Plaintiff Dep., pg. 21:11-23:16; 54:23-55:11). Therefore, in order to show she was an employee suffering from a "serious health condition," Plaintiff must demonstrate that she underwent "continuing treatment by a health care provider." 29 U.S.C. §2611(11)(B). She did not.

The regulations implementing the FMLA provide that a "serious health condition involving continuing medical treatment by a health care provider" is one that involves "a period of incapacity of *more than three consecutive, full calendar days, and* any subsequent treatment or period of incapacity relating to the same condition..." 29 C.F.R. §825.115 (a)(1),(2) (*emphasis* added).[7] Accordingly, to avoid summary judgment, Plaintiff "must show [] that [s]he was unable 'to work, attend school or perform other regular daily activities due to [a] serious health condition' [] for more than three consecutive, full calendar days. *Jude v. Hitachi Auto. Sys. Am.*, E.D. Ky. No. 5:15-cv-57-KKC, 2016 U.S. Dist. LEXIS 95814, *5 (July 22, 2016).

The determination of whether Plaintiff was "incapacitated" within the meaning of the FMLA is a threshold consideration for her claims under the FMLA. *Olsen v. Ohio Edison Co.,* 979 F.Supp. 1159, 1164 (N.D. Ohio 1997) ("Before the Court even considers the 'continuing treatment' prong of the definition of serious medical condition [plaintiff] must first demonstrate that [s]he suffered from a period of incapacity within the meaning of that regulation. Under the plain language of the statute and regulations, this is the threshold consideration."). "If [plaintiff] fails to show that [s]he had an injury or illness that incapacitated h[er] for more than three days,

---

[7] There can be no dispute that the conditions qualifying as a "serious health condition" as set forth in 29 C.F.R. §825.115 (b) through (e) do not apply to Plaintiff, *i.e.,* pregnancy, chronic conditions, permanent long term conditions, and conditions requiring multiple treatments, *e.g.,* cancer.

the Court's inquiry is over and summary judgment is appropriate." *Id.; see also Bond v. Abbott Labs.*, 7 F. Supp. 2d 967, 973 (N.D. Ohio 1998) (to survive summary judgment, "[t]he plaintiff then must show that the period of incapacity was required to be at least four consecutive days.").

There is no genuine dispute Plaintiff was not incapacitated for a period of "more than three consecutive, full calendar days" as required by 29 C.F.R. §825.115. The documentation submitted by Plaintiff and Plaintiff's deposition testimony establish that Plaintiff missed work and sought FMLA leave for only three calendar days – May 7, 8, and 9, 2017. (Plaintiff Dep., pg. 45:2-46:18; 49:23-50:2; 61:8-11; 106:9-107:10; *see also* Exhibit 6). There is no dispute that Plaintiff went to the emergency room on May 7, 2017, was off work through May 9, 2017, returned to work on May 10, 2017, and did not miss any more work thereafter. (*Id.*). Northern District of Ohio courts hold "where, as here, an employee claiming the right to leave under the FMLA has not established that a qualifying 'health care provider' made an assessment of his or her condition and concluded that proper treatment of that condition 'required' the employee's absence from work for over three days, summary judgment in favor of the employer-defendant is appropriate." *Olsen,* 979 F.Supp. at 1167-1168; *Bond,* 7 F.Supp.2d at 976-977.

The holdings of *Olsen* and *Bond* apply here. The only medical provider to state that Plaintiff was required to miss work was the emergency room personnel who stated Plaintiff "was seen and treated in our Emergency Department on 05/07/2017. She may return to work on 05/10/2017." (Exhibit 6). Plaintiff admits that no other health care provider ordered her off work. (Plaintiff Dep., pg. 98:18-99:14). Therefore, as in *Olsen*, summary judgment in favor of Walmart is appropriate because there is no genuine issue of material fact that Plaintiff's health care providers never concluded she was required to be absent from work for more than three days. *See also Layman v. C & D Techs., Inc*., E.D.Tenn. No. 1:03-cv-275, 2004 U.S. Dist.

12

LEXIS 27696, *31 (November 4, 2004) (granting summary judgment on interference and retaliation claims because "the Court finds that [plaintiff] did not suffer from a 'serious health condition' at the time of her three-day absence in May 2002. There is no doubt that [plaintiff]'s May 2002 absence was not 'more than three consecutive calendar days.'"); *Bond,* 7 F.Supp.2d at 974 ("a health care provider must instruct, recommend, or at least authorize an employee not to work for at least four consecutive days for that employee to be considered incapacitated for the required period of time under the FMLA.").

Such a finding is consistent with legislative purpose of the FMLA that "minor and short-term conditions [] are not covered under the FMLA." 29 C.F.R. §825.114(c). A plethora of federal courts have reinforced Congress's intent that short term, minor illnesses and procedures are not covered under the FMLA. *See, e.g., Olsen*, 979 F. Supp. at 1163 (arthritis and backaches generally not covered); *Bauer v. Varity Dayton-Walther Corp*., 118 F.3d 1109 (6th Cir. 1997) (hematochezia, i.e., rectal bleeding, not covered); *Beaver v. RGIS Inventory Specialists, Inc.,* 144 F. App'x 452, 455-56 (6th Cir. 2005) (holding that plaintiff's acute sinusitis, bronchitis, and ear infection, for which she was prescribed a treatment regimen of antibiotics, did not qualify as a "serious health condition," and reasoning that "the legislative history of the FMLA makes it clear that routine, commonplace illnesses of short duration are not covered by the statute").

Plaintiff did not suffer from a "serious health condition" at the time of her three-day absence in May 2017 as she was not "incapacitated" under the FMLA and was thus not entitled to leave under the FMLA. Accordingly, Walmart is entitled to judgment as a matter of law.

### 2. *Plaintiff Failed To Provide A Medical Certification As Requested And Thus Her Claim For FMLA Leave Was Properly Denied As A Matter Of Law*.

Where, as here, Walmart requests a medical certification, Plaintiff bears the responsibility of furnishing certification of her serious medical condition or her claim can properly be denied.

*See* 29 C.F.R. §825.305(d). Thus, Plaintiff must provide sufficient certification to Walmart within fifteen days of her FMLA request, "unless it is not practicable under the particular circumstances to do so." 29 C.F.R. §825.305(b). Sufficient certification requires the health care provider to state "the date on which the serious health condition began, the probable duration of the condition, the appropriate medical facts within the health care provider's knowledge, and a statement that the employee is unable to perform her job duties." ***Novak v. MetroHealth Med. Ctr.***, 503 F.3d 572, 578 (6th Cir. 2007), ***quoting Brenneman v. MedCentral Health Sys.***, 366 F.3d 412, 422 (6th Cir. 2004).

In this case, Plaintiff initiated her FMLA request on May 8, 2017. (Plaintiff Dep., pg. 36:1-37:24). There is no dispute that Walmart, via Sedgwick, requested a medical certification from Plaintiff in writing on May 8, 2017. (Plaintiff Dep., pg. 95:15-96:8; ***see also*** Exhibit 5). There is also no dispute that Plaintiff never submitted to Sedgwick or Walmart a completed medical certification form. (Plaintiff Dep., pg. 96:3-98:9). This Court has previously noted that "when an employee fails to provide certification, 'the employer may deny the taking of FMLA leave.'" ***Kinds v. Ohio Bell Tel. Co.***, N.D. Ohio No. 1:10-CV-01596, 2012 U.S. Dist. LEXIS 105507, *16 (July 30, 2012), ***citing*** 29 C.F.R. §825.305(d). Accordingly, Plaintiff's failure to satisfy the medical certification requirement for leave under FMLA is fatal to her claim of FMLA interference as a matter of law. ***See Novak, supra,*** 503 F.3d 572; ***Gulan v. FRB of Cleveland,*** 2003 U.S. Dist. LEXIS 15749, 2003 WL 22047802 (N.D. Ohio Aug. 27, 2003); ***see also Harrington v. Boysville of Michigan, Inc.,*** 145 F.3d 1331 (6th Cir. 1998).

It is anticipated that Plaintiff will argue that the one page emergency room letter and/or discharge paperwork she submitted to Sedgwick qualified as a medical certification.[8] However,

---

[8] This documentation does not include the date on which Plaintiff's health condition began, the probable duration of the condition, the appropriate medical facts within the health care provider's knowledge, or a statement that Plaintiff

this paperwork actually does the opposite. ***Lackey v. Jackson Cty., Tenn.***, 104 F. App'x 483, 489 (6th Cir. 2004) ("ambiguous doctor's notes" do not satisfy an employee's burden of establishing incapacity or that the employee suffered from a serious health condition qualifying him for FMLA leave). Further, the letter and discharge papers Plaintiff submitted make clear that she did not receive inpatient care, was ordered off work for only three days, and therefore on their face, establish that Plaintiff was not entitled to FMLA protection. (***See*** Exhibit 10). Under Sixth Circuit law, because these documents demonstrate Plaintiff was not qualified for FMLA leave, Sedgwick and Walmart were entitled to rely on this documentation to deny Plaintiff's FMLA leave without further inquiry. ***Nawrocki v. United Methodist Retirement Comtys., Inc.,*** 174 F. App'x 334, 338 (6th Cir. 2006). As a result, Plaintiff cannot demonstrate that she was entitled to leave under the FMLA or that Walmart interfered with FMLA rights to which she was entitled. As a result, Plaintiff's FMLA interference claim fails as a matter of law. ***Id.***

> **C.** **Plaintiff's Retaliation Claim Fails As A Matter Of Law Because She Did Not "Avail" Herself of an FMLA Protected Right And Termination Of Her Employment Was Not Causally Related To Any FMLA Related Activity.**

As Plaintiff has no direct evidence of a retaliatory motive, her FMLA retaliation claim must be analyzed under the burden-shifting framework set forth in ***McDonnell Douglas Corporation v. Green***, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). ***Edgar v. JAC Products,*** 443 F.3d 501, 508 (6th Cir. 2006). To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that (1) she was engaged in an activity protected by the FMLA; (2) Walmart knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her;

---

is unable to perform her job duties, all of which are required to qualify as FMLA medical certification. ***Novak***, 503 F.3d at 578.

and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. ***Arban v. West Publ'g Corp.,*** 345 F.3d 390, 404 (6th Cir.2003).

      Plaintiff cannot establish a *prima facie* case of retaliation because she was not entitled to FMLA leave (because, as explained in Section IV(B) *supra,* she was not incapacitated and failed to submit a completed medical certification) and therefore was not engaged in activity protected by the FMLA. The Sixth Circuit and other courts have held that a plaintiff cannot establish a *prima facie* case of FMLA retaliation where the plaintiff failed to demonstrate entitlement to FMLA leave in the first instance. ***Morris v. Family Dollar Stores of Ohio, Inc*** ., 320 F. App'x 330, 338 (6th Cir. 2009) ("Because [plaintiff's] leave was not on account of a serious health condition, [s]he cannot establish the first element [of the retaliation claim], that [s]he engaged in an activity protected by the FMLA."); s*ee also Heard v. SBC Ameritech Corp.,* E.D. Mich. No. 05-71712, 2005 U.S. Dist. LEXIS 46464, at *23-24 (July 27, 2005), ***affirmed*** 205 F. Appx. 355 (6th Cir. 2006); ***Cash v. Smith,*** 231 F.3d 1301, 1307 (11th Cir. 2000) (affirming summary judgment on an FMLA retaliation claim where plaintiff failed to show that she suffered from a serious medical condition and therefore her entitlement to FMLA leave), ***superseded on other grounds as noted in Ward v. City of Gadsden***, 2017 U.S. Dist. LEXIS 19793, *14 (Feb. 13, 2017); ***Smith v. Hope School,*** 560 F.3d 694, 701 (7th Cir. 2009) (indicating that if the plaintiff's leave request was invalid, then "[she] was not engaging in statutorily protected activity and thus could not have been fired for asserting her rights under the FMLA"); ***Robinson v. Farmers Servs. LLC,*** D. Kan. No. 10-02244, 2010 U.S. Dist. LEXIS 110128, at *12-13 (Oct. 14, 2010). Because there is no dispute that Plaintiff was not entitled to FMLA leave and therefore did not avail herself of an FMLA protected right, her claim for retaliation fails as a matter of law. ***Morris***, 320 F. App'x at 338; ***Nawrocki, supra,*** 174 F. App'x at 338 (6th Cir. 2006) (finding that

because "Plaintiff had not raised a [valid] claim under the FMLA, [] she fails the first prong of the retaliation test").

Alternatively, Plaintiff's retaliation claim fails because she cannot establish a causal connection between her FMLA activity and termination. Under a retaliation theory, "the employer's motive is an integral part of the analysis." *Edgar,* 443 F.3d at 508. Here, there is no evidence that Walmart terminated Plaintiff because she invoked her FMLA rights.[9] *Id.* (instructing that FMLA retaliation "claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights."). Instead, the evidence is undisputed that Walmart terminated Plaintiff's employment because she violated Walmart's attendance policy. Courts within the Sixth Circuit routinely find a lack of causal connection as a matter of law under these circumstances. *See, e.g., Manns v. ArvinMeritor, Inc.,* 291 F. Supp. 2d 655, 662 (N.D. Ohio 2003) (holding that termination for absenteeism when Plaintiff fails to qualify for FMLA leave does not establish causal connection for retaliation claim); *Willis v. Legal Aid Defender Ass'n*, E.D. Mich. No. 11-11384, 2012 U.S. Dist. LEXIS 9303, *35 (Jan. 26, 2012); *Jude, supra,* 2016 U.S. Dist. LEXIS 95814.

It is anticipated that Plaintiff will argue that Jim Smokonich, a member of Store 1707's management team, making the comment that "management is upset because [Plaintiff] contacted human resources" demonstrates a causal connection between Plaintiff's FMLA activity and her termination. This argument is specious because it is nothing more than a self serving alleged "stray remark." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S. Ct. 1775 (1989) (statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself, do not satisfy the plaintiff's burden). That this comment was a "stray remark" is

---

[9] In fact, the evidence in this case is the opposite as Plaintiff had previously requested and received a leave of absence under the FMLA in 2009 and suffered no adverse action as a result. (Plaintiff Dep., pg. 126:4-127:3; Plaintiff's Request for Leave of Absence – FMLA, April 13, 2009, attached as Exhibit 14; Bishop Dec., ¶ 3).

supported by the undisputed facts that Smokonich was not a decision maker, the alleged comment was unrelated to the decision making process at issue, *i.e.,* whether Plaintiff's absences were covered by the FMLA, and the alleged comment was one "merely vague, isolated, and ambiguous remark." ***Cooley v. Carmike Cinemas, Inc.***, 25 F.3d 1325, 1330 (6th Cir. 1994). The Sixth Circuit has repeatedly held that "stray remarks, particularly those made by a person other than a decision-maker, are not enough" to show discrimination or retaliation. ***Suits v. The Heil Co.,*** 192 Fed. Appx. 399, 407 (6th Cir. 2006); ***see also Shefferly v. Health Alliance Plan of Michigan,*** 94 Fed. Appx. 275, 281 (6th Cir. 2004); ***Crook v. Simpson Strong-Tie Co.***, M.D.Tenn. No. 3:10-cv-00445, 2012 U.S. Dist. LEXIS 4833, *54 (Jan. 17, 2011) ("stray remarks by [] an individual who did not decide to terminate [plaintiff], do not constitute compelling evidence of retaliatory animus, particularly where there is no evidence that [] the actual decision-maker was motivated by anything other than legitimate business considerations.").

As there is no genuine dispute that Plaintiff cannot demonstrate she availed herself of an FMLA protected right or that her termination was causally related to her FMLA activity, Walmart is entitled to judgment as a matter of law on Plaintiff's claim for FMLA retaliation.

### D.  There Is No Evidence Of Pretext As Walmart Applied Its Attendance Policy.

Walmart had a legitimate, non-retaliatory reason for terminating Plaintiff's employment: she violated Walmart's Attendance Policy by accumulating nine (9) occurrences in a six (6) month period. (Mavar Dec., ¶ 10; Reed Dec., ¶ 13). Plaintiff does not dispute that if her absences on May 7, 8, and 9, 2017 were not protected by the FMLA, she was in violation of Walmart's Attendance Policy and subject to termination. (Plaintiff Dep., pg. 18:2-20:4); ***Harrigan v. Dana Corp.,*** 612 F.Supp.2d 929, 944-945 (N.D. Ohio 2009) (employee's failure to adhere to company attendance policy was legitimate, non-discriminatory reason for discharge).

18

In an effort to show pretext, it is expected that Plaintiff will argue other Walmart associates at Store 1707 received approval for FMLA leaves of three (3) days or less such that denial of her FMLA leave request for three (3) days was improper, and therefore insufficient to motivate her termination. However, in each of those situations, the associate qualified for FMLA because they or a qualified family member underwent inpatient care. (Bishop Dec., ¶¶8-12). Also, each associate who had an approved FMLA leave of three (3) days or less submitted a completed medical certification and their employment continued. (Bishop Dec., ¶8). In the event other associates failed to submit a completed medical certification, their leave of absence requests were also denied which resulted in them receiving occurrences per Walmart's Attendance Policy. (Bishop Dec., ¶11). Thus, this argument supports Walmart position that associates exercising their rights under the FMLA play no role in employment decisions. Had Plaintiff's absences qualified for FMLA leave, Plaintiff would not have accumulated occurrences and her employment would have continued. (Mavar Dec., ¶8). But, because Plaintiff did not qualify for FMLA leave, she did accumulate occurrences for her absences on May 7, 8, and 9, 2017. This resulted in Plaintiff violating the Attendance Policy. The record is devoid of any evidence that Plaintiff's accumulation of nine (9) occurrences in a six (6) month period in violation of Walmart's policy had no basis in fact, was insufficient to warrant Plaintiff's termination, or did not actually motivate Walmart to terminate Plaintiff's employment.

Sixth Circuit law holds that "[i]n deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998). In reviewing Walmart's decision to terminate Plaintiff's employment, the

Court must look for "error on the part of the employer that is too obvious to be unintentional." ***Seeger v. Cincinnati Bell Tel. Co.,*** 681 F.3d 274, 286 (6th Cir. 2012).

There is no evidence in the record showing any gross deficiency or oversight in Walmart's termination decision. The record shows that Walmart provided Plaintiff with ample opportunity to seek an FMLA leave for her absences on May 7, 8, and 9, 2017. Sedgwick denied Plaintiff's leave after reviewing the information Plaintiff submitted. Plaintiff's absences were unauthorized and resulted in accumulation of occurrences under the Attendance Policy. Once an employer concludes there is no protection for absences under the FMLA leave, it is permissible to discharge an employee for absenteeism. ***Manns,*** 291 F. Supp. 2d at 662; ***Jude, supra,*** 2016 U.S. Dist. LEXIS 95814. This holds true even if the application of the policy turns out to be incorrect provided Walmart had an honest belief that Plaintiff violated Walmart's attendance policy. ***Harrigan,*** 612 F.Supp.2d at 945, ***citing Sybrandt v. Home Depot, U.S.A., Inc***., 6th Cir. No. 08-5598, 560 F.3d 553, 2009 U.S. App. LEXIS 6401, * 5 (March 26, 2009).  Walmart held an "honest belief" in Plaintiff's violation of the Attendance Policy as Walmart made a reasonably informed and considered decision before terminating Plaintiff as evidenced by multiple members of management and human resources reviewing the situation. ***Harrigan,*** 612 F.Supp.2d at 945, ***citing Michael v. Caterpillar Fin. Servs. Corp***., 496 F.3d 584, 598-99 (6th Cir. 2007).  There is no evidence showing that Walmart's reasons for terminating Plaintiff's employment were dishonest, pretextual, not sincerely held, retaliatory, or discriminatory.  Judgment as a matter of law is warranted on Plaintiff's FMLA retaliation claim.

## V.    CONCLUSION

For all the foregoing reasons, Walmart is entitled to summary judgment on all of Plaintiff's claims as a matter of law.

Respectfully submitted,

*/s/ Donald C. Bulea*
Karen L. Giffen (0042663)
Donald C. Bulea (0084158)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:  (216) 621-5161
Facsimile:  (216) 621-2399
E-Mail:      kgiffen@thinkgk.com
             dbulea@thinkgk.com
**Counsel for Defendant Wal-Mart Stores East, LP**

## CERTIFICATION OF EXCHANGE WITH PLAINTIFF'S COUNSEL

Walmart has complied with this Court's Order of April 18, 2018 (Doc. 12) requiring it to confer with Plaintiff's counsel prior to filing any dispositive motion. On October 15, 2018, counsel for Walmart sent Plaintiff's counsel a letter describing its position and requesting judgment on all of Plaintiff's claims against Walmart. Plaintiff's counsel responded on October 22, 2018, refused to dismiss any claims or grant judgment in favor of Walmart, and stated her reasons therefore.  Walmart considered Plaintiff's response and reassessed its position, however, as set forth in this Motion, Walmart believes it is entitled to summary judgment on all of Plaintiff's claims.

*/s/ Donald C. Bulea*
Donald C. Bulea (0084158)
**Counsel for Defendant Wal-Mart Stores East, LP**

21

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I certify that the foregoing Memorandum in Support of Walmart's Motion for Summary Judgment complies with the page limitation set forth Local Rule 7.1 for cases assigned to the standard track, excluding the exhibits which are separate from the Memorandum.

/s/ Donald C. Bulea
Donald C. Bulea (0084158)
**Counsel for Defendant Wal-Mart Stores East, LP**

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2018, a copy of the foregoing *Motion for Summary Judgment* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system upon the following Parties:

Kami D. Brauer, Counsel for Plaintiff Susan L. Mortimer, at kamibrauer@kdbrauerlaw.com.

/s/ Donald C. Bulea
Donald C. Bulea (0084158)
**Counsel for Defendant Wal-Mart Stores East, LP**

22